IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SHEILA D., | * |
| Plaintiff, | * |
| vs. | *   Civil Action No.   ADC-20-1137 |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,[1] | * |
| Defendant. | * |

## MEMORANDUM OPINION

On May 4, 2020, Sheila D. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny her claim for Supplemental Security Income ("SSI"). ECF No. 1 ("the Complaint"). After consideration of the Complaint, the parties' cross-motions for summary judgment (ECF Nos. 13, 16) the Court finds that no hearing is necessary. Loc.R. 105.6 (D.Md. 2018). In addition, for the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 13) and Defendant's Motion for Summary Judgment (ECF No. 16) are DENIED, the decision of the SSA is REVERSED, and the case is REMANDED to the SSA for further analysis in accordance with this opinion.

### PROCEDURAL HISTORY

On May 2, 2017, Plaintiff filed a Title XVI application for SSI, alleging disability beginning on May 2, 2017. Her claim was denied initially and upon reconsideration on June 6, 2016 and December 21, 2017, respectively. Subsequently, on December 22, 2017, Plaintiff filed

---

[1] Currently, Andrew Saul serves as the Commissioner of the Social Security Administration.

1

a written request for a hearing and, on March 13, 2019, an Administrative Law Judge ("ALJ") presided over a hearing. On April 9, 2019, the ALJ rendered a decision denying Plaintiff's claim for SSI. Thereafter, Plaintiff filed an appeal of the ALJ's disability determination, and, on March 17, 2020, the Appeals Council affirmed the ALJ's decision

On May 4, 2020, Plaintiff filed the Complaint in this Court seeking judicial review of the SSA's denial of her disability application. On December 10, 2020, Plaintiff filed a Motion for Summary Judgment, and Defendant filed a Motion for Summary Judgment on March 29, 2021.[2] This matter is now fully briefed, and the Court has reviewed both parties' motions.

### STANDARD OF REVIEW

"This Court is authorized to review the [SSA]'s denial of benefits under 42 U.S.C.A. § 405(g)." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (citation omitted). The Court, however, does not conduct a *de novo* review of the evidence. Instead, the Court's review of an SSA decision is deferential, as "[t]he findings of the [SSA] as to any fact, if supported by substantial evidence, shall be conclusive . . ." 42 U.S.C. § 405(g); *see Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) ("We do not conduct a *de novo* review of the evidence, and the [SSA]'s finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence." (citations omitted)). Therefore, the issue before the reviewing court is not whether the plaintiff is disabled, but whether the ALJ's finding that the plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Brown v. Comm'r Soc. Sec. Admin.*,

---

[2] On April 26, 2021, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District Court for the District of Maryland and upon consent of the parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings.

2

873 F.3d 251, 267 (4th Cir. 2017) ("[A] reviewing court must uphold the [disability] determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." (citation and internal quotation marks omitted)).

"Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (internal citations and quotation marks omitted). "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal citations and quotation marks omitted). Therefore, in conducting the "substantial evidence" inquiry, the court shall determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### DISABILITY DETERMINATIONS AND BURDEN OF PROOF

In order to be eligible SSI, a claimant must establish that she is under disability within the meaning of the Act. The term "disability," for purposes of the Act, is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). A claimant shall be determined to be under disability where "h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education,

3

and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Act, the ALJ, acting on behalf of the SSA, follows the five-step evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). The evaluation process is sequential, meaning that "[i]f at any step a finding of disability or nondisability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b).

At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments] that meets the duration requirement[.]" 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirement of twelve months, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.909, 416.920(a)(4)(ii), 416.920(c).

At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, then the claimant is considered disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. §§

404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's residual functional capacity ("RFC"), which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2).

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.1529. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1). At this second stage, the ALJ must consider all of the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 16-3p, 2017 WL 5180304, at *2–13 (Oct. 25, 2017). To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments she has received for her symptoms, medications, and any other factors contributing to functional limitations. *Id.* at *6–8.

At step four, the ALJ considers whether the claimant has the ability to perform past relevant work based on the determined RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).

Where the claimant is unable to resume past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. During steps one through four of the evaluation, the claimant has the burden of proof. 20 C.F.R. §§ 404.1520, 416.920; *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Radford*, 734 F.3d at 291. At step five, however, the burden of proof shifts to the ALJ to prove: (1) that there is other work that the claimant can do, given the claimant's age, education, work experience, and RFC (as determined at step four), and; (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see Hancock*, 667 F.3d at 472–73; *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the claimant can perform other work that exists in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 404.1560(c), 416.920(a)(4)(v). If the claimant cannot perform other work, then the claimant is disabled. *Id.*

## ALJ Determination

In the instant matter, the ALJ preliminarily found that at step one that Plaintiff "ha[d] not engaged in substantial gainful activity since May 2, 2017, the application date." ECF No. 12-3 at 15. At step two, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease, obesity, learning disorder, and borderline intellectual functioning." *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that

met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* At step four, the ALJ determined that Plaintiff had the RFC:

> [T]o perform light work as defined in 20 CFR 404.967(b) except [Plaintiff] can climb ramps and stairs occasionally, and climb ladders, ropes, or scaffolds occasionally. [Plaintiff] is able to perform simple, routine and repetitive job tasks but not at a production rate pace (e.g. assembly line work).

*Id.* at 16. The ALJ then noted that Plaintiff has no past relevant work. *Id.* at 20. Finally, at step five, the ALJ determined that "considering [Plaintiff]'s age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." *Id.* Thus, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, since May 2, 2017, the date the application was filed." *Id.* at 22.

## DISCUSSION

Plaintiff raises two main allegations of error on appeal: (1) ALJ posed an improper hypothetical to the Vocational Expert ("VE") and (2) the inclusion of Dr. Budney's 2010 report in the evidentiary record was "suggestive and prejudicial." The Court agrees with Plaintiff's first argument and will address both arguments below.

### A. The ALJ erred by not providing a definition for "production rate pace" in his hypothetical to the VE.

Plaintiff takes two issues with the ALJ's hypothetical questions posed to the VE. First, Plaintiff argues that the ALJ's hypotheticals were improper because the ALJ failed to define "production rate pace." ECF No. 13-1 at 6. Second, Plaintiff asserts that the ALJ erred by not including illiteracy in the hypothetical questions. *Id.* at 7. The Court agrees with Plaintiff's first argument.

The Commissioner employs VEs to offer evidence as to whether a claimant possesses the RFC to meet the demands of past relevant work or adjust to other existing work. 20 C.F.R. §§

7

404.1560(b)–(c), 416.960(b)–(c). The VE may respond to a hypothetical about a person "with the physical and mental limitations imposed by the claimant's medical impairment(s)." 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006) (quoting *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)). "[A] hypothetical question is unimpeachable if it adequately reflects a [RFC] for which the ALJ had sufficient evidence." *Fisher v. Barnhart*, 181 F.App'x 359, 364 (4th Cir. 2006) (per curiam) (internal quotation marks omitted) (emphasis omitted) (quoting *Johnson*, 434 F.3d at 659).

Plaintiff challenges the ALJ's use of the term "production rate pace" because the ALJ did not define the term until the written opinion. ECF No. 13-1 at 6. In the opinion, the ALJ explained that Plaintiff had the RFC to "perform simple, routine and repetitive tasks but not at a production rate pace (e.g. assembly line work)." ECF No. 12-3 at 16. Plaintiff points to the Fourth Circuit's opinion in *Thomas v. Berryhill*, 916 F.3d 307 (4th Cir. 2019), to bolster her argument that the ALJ's use of the undefined term "production rate pace" is a basis for remand. ECF No. 13-1 at 6.

In *Thomas v. Berryhill*, the Fourth Circuit found that the underlying ALJ's analysis "fail[ed] to provide a logical explanation of how she weighed the record evidence and arrived at her RFC findings." 916 F.3d at 311. One of the four errors the court found the ALJ made during the RFC analysis was that the ALJ did not provide the court "enough information to understand" the restriction that claimant "could not perform work 'requiring a production rate or demand pace.'" *Id.* at 311–12. The Fourth Circuit found that "[c]ombined, the above-listed missteps in the ALJ's RFC evaluation frustrate our ability to conduct meaningful appellate review." *Id.* at 312.

In interpreting *Thomas v. Berryhill*, this Court has encountered two categories of scenarios regarding an ALJ's use of "production rate pace," or similar terms: scenarios in which the ALJ provided a definition for the term, and scenarios in which the ALJ did not. In *Teresa B. v. Commissioner, Social Security Administration*, No. SAG-18-2280, 2019 WL 2503502 (D.Md. June 17, 2019), the ALJ in the underlying decision "included an RFC provision limiting Plaintiff to 'no work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the other)." *Id.* at *2. The Court in this case found that the ALJ's use of "production-rate pace" was acceptable because he included a definition for the term immediately thereafter. *Id.* On the other hand, in *Travis X. C. v. Saul*, No. GJH-18-1210, 2019 WL 4597897 (D.Md. Sept. 20, 2019), the ALJ in the underlying decision included an RFC provision that the plaintiff "can perform jobs consisting of simple (1- to 3-step tasks), routine, and repetitive tasks, in a work environment without production rate pace." *Id.* at *2. The ALJ in that case did not include a definition or explanation of what he meant by "production rate pace." *Id.* at *5. The Court, therefore, found "the ALJ did not provide the proper 'logical bridge'" to support his use of the term "production rate pace," and the Court was "left to guess" the basis of the term, warranting remand. *Id.*

Here, this case is similar to *Teresa B.* because the ALJ attempted to define "production rate pace" in the RFC. However, unlike in *Teresa B.*, the ALJ's use of "assembly line work" as a definition cannot rectify the improper hypothetical posed to the VE. *Cleta S. v. Saul*, No. CBD-19-2906, 2020 WL 6565250, at *5 (D. Md. Nov. 9, 2020). In *Cleta S.*, the Court held that the ALJ erred by not defining the term "production rate pace" in the hypothetical posed to the VE, and "found it troubling that the ALJ attempted to clarify his use of the term…for the first time in his written opinion, as meaning 'assembly line work.'" *Id.* Though some courts have held that

9

defining the term "production rate pace" with reference to assembly line work is sufficient, it was discussed only in reference to the RFC alone and not the hypotheticals. *Sheri S. v. Saul*, No. GLS-19-1924, 2020 WL 4579871, at *4 (D.Md. Aug. 7, 2020); *Nelson v. Saul*, No. 4:18-CV-163-D, 2019 WL 4748028, at *5 (E.D.N.C. Aug. 29, 2019).

While the ALJ attempted to clarify what he meant by "production rate pace" in the RFC by including the example of "assembly line work", the ALJ failed to provide a definition, explanation, or anything else in his hypothetical to the VE, rendering the VE's testimony useless. *Angela S. v. Saul*, No. TJS-19-2849, 2021 WL 733373 at *3 (D.Md. Feb. 25, 2021). As noted, a VE's testimony "must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Hines*, 453 F.3d at 566. By failing to define "production rate pace" in the hypothetical, the ALJ did not account for all of Plaintiff's impairments, making the hypothetical improper.

Even *assuming arguendo* that the ALJ's description of "production rate pace" provided in the RFC is sufficient for the Court to understand its meaning, there is no indication that the VE shared this understanding at the hearing. *Cleta S.*, 2020 WL 6565250, at *6. "The Fourth Circuit has described the term 'production rate pace' as not especially common—certainly not common enough for [the court] to know what the term means without elaboration." *Angela S* 2021 WL 733373 at *3 (quoting *Thomas*, 916 F.3d at 312). Defendant argues that because "the VE expressed no confusion during the hearing," the ALJ did not err in failing to include a definition. ECF No. 16-1 at 5. The Court disagrees. *Jeffery H. v. Saul*, No. TJS-20-0050, 2020 WL 6685282 (D.Md. filed Nov. 12, 2020). "Even if the VE's testimony does not evince any confusion about the terms of the hypothetical, the Court has an independent duty to determine if the ALJ supported [their] findings with substantial evidence." *Geneva W. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-1812,

2019 WL 325433, at *3 (D.Md. July 19, 2019). It is uncertain whether the VE could have identified the same, or any, positions that the hypothetical person could perform had the ALJ defined or explained "production pace rate."

Because the VE provided testimony in response to a hypothetical where the ALJ did not elaborate on the term "production rate pace" the Court's ability to conduct review is frustrated. Accordingly, the Court finds remand is warranted on the basis of an improper hypothetical.

Plaintiff also argues that the ALJ erred because the ALJ "failed to include illiteracy in the hypothetical question" to the VE. ECF No. 13-1 at 7. Plaintiff relies on the 2019 evaluation by Dr. Ansel to support the argument that Plaintiff is illiterate. *Id.* In that evaluation, Plaintiff "tested in the extremely low range of intelligence. Her reading level was less than the second grade." ECF No. 12-3 at 17. However, regarding Plaintiff's illiteracy, the ALJ highlighted that Dr. Ansel determined Plaintiff was "nearly illiterate" and noted that determination to be "persuasive to the extent that, contrary to [Plaintiff's] argument, [Plaintiff] is not illiterate." *Id.* An illiterate individual is classified as one who "generally has had little to no formal schooling" and "cannot read or write a simple message such as instructions or inventory lists." 20 C.F.R. § 416.964(b)(1). Here, Plaintiff testified that she graduated high school and is able to read "a little but not… a whole bunch." ECF No. 12-3 at 80, 82. Therefore, the Court rejects Plaintiff's argument that the ALJ erred by not including illiteracy in the hypothetical posed to the VE because the ALJ never determined Plaintiff to be illiterate.

B. The inclusion of Dr. Budney's report in the record did not harm Plaintiff.

Plaintiff's final argument is that the inclusion of Dr. Budney's report in the evidentiary record "was suggestive and prejudicial" to Plaintiff. ECF No. 13-1 at 6. The Court finds this argument

without merit. Plaintiff appears to argue that the inclusion of the 2010 report infected Plaintiff's disability determination. *Id.* at 6-7. However, the evidence does not support this assertion.

It is clear that the ALJ considered all of the medical evidence and other evidence in the record when evaluating Plaintiff's claims. The ALJ addresses over six separate opinions on Plaintiff's mental status and explains the weight given to each. ECF No. 12-3 at 19-20. The ALJ does not rely solely on the 2010 opinion of Dr. Budney, and notes that it is outdated. *Id.* at 19. In fact, the portion of Dr. Budney's opinion that the ALJ considers persuasive is supported by three separate opinions. *Id.* at 19 (the opinions of the state agency, Dr. Langlieb from 2018, and Dr. Smith from 2017, all found Plaintiff able to "understand and follow simple instructions"). The ALJ also explains that Plaintiff's hearing testimony in part "demonstrates that she does not have marked-extreme capabilities." *Id.* Therefore, the Court finds that the use of Dr. Budney's opinion was not suggestive or prejudicial to Plaintiff's disability determination.

## CONCLUSION

In summation, the Court finds that the ALJ improperly found that Plaintiff was "not under a disability", as defined by the Act, since May 2, 2017, the date the application was filed. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED IN PART due to inadequate analysis. Therefore, based on the foregoing, Plaintiff's Motion for Summary Judgment (ECF No. 13) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 16) is DENIED, and the decision of the SSA is REMANDED for further proceedings in accordance with this opinion. In so holding, the Court expresses no opinion as to the ALJ's ultimate disability determination. The clerk is directed to CLOSE this case.

Date: 18 May 2021

A. David Copperthite
United States Magistrate Judge